ROBERT C. NORDBLOM & others, trustees, *vs.* JACK J. MOSS & others.

Middlesex.     April 8, 1966. — June 15, 1966.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & SPIEGEL, JJ.

*Adverse Possession and Prescription.   Land Court, New trial.*

A finding by a judge of the Land Court, that petitioners for registration of title to a disputed area of land and their predecessors in title had "exercised complete control and exclusive dominion, continuously, openly, adversely and notoriously and . . . [had] occupied and used the disputed area under a claim of ownership" for more than twenty years supported a conclusion that the petitioners had title to the disputed area by adverse possession.   [175]

No abuse of discretion appeared in denial by a judge of the Land Court of a motion for a new trial of a registration proceeding on the ground of newly discovered evidence where the new evidence had been available at the time of the trial and was similar to evidence offered at the trial.   [175–176]

---

PETITION filed in the Land Court on November 5, 1962.

The case was heard by *Fenton*, J.

*Jack J. Moss* for the respondents.

*James D. St. Clair* for the petitioners.

SPIEGEL, J. This is a petition brought in the Land Court under the provisions of G. L. c. 185 to register title to a parcel of land containing 18.22 acres on the Burlington-Lexington town line (17.02 acres in Burlington and 1.20 acres in Lexington). The case is here on exceptions by the respondents to the denial of all their requests for rulings and to the denial of their motion for a new trial.

The locus is divided into two portions by a wall running northeasterly from the southwesterly line of the locus to its northeast side. The plan filed with the petition shows the line of the wall. The words "Mountain (private) Road" are printed along the southeast side of that line. The respondents claim that they have title to that portion of the locus which lies southeasterly of the wall, and that the petitioners did not obtain title by adverse possession. "[T]he disputed portion was included in a plan of land of Franklin P. Simonds made by a surveyor and dated August 9, 1923 . . .. Simonds died in 1930 and [the] locus including the disputed portion was included in the inventory of his estate . . . and mortgaged by his executors in 1933 at which time the 1923 plan was recorded . . .. In 1943 they conveyed to Albert H. Burnham . . . who died in 1959, [the] locus being included in the inventory of his estate and conveyed by his devisees to the petitioners in 1962." However, the Land Court examiner found that the record title to the disputed portion is in the respondents, and traced their title to a deed given in 1849.

William H. Burnham, a son of the petitioners' predecessor in title, testified "that after his father bought the property in 1943 Frederick Spencer, a clerk of the Lexington Assessor's, since deceased, took him all around the locus showing him the boundaries and at that time there was an old wire fence around two sides of the locus and in better condition and more of it than there is at present. The plan

of 1923 shows that on the Mountain Road side of the disputed portion there was a wall and on the remaining side the property bounded on other land of Simonds. Burnham testified that Spencer told him that Simonds had given him permission to hunt on the property and that he had done so. Spencer also told him that Simonds pastured cows thereon as early as about 1900. Burnham also testified that his father purchased the locus as a wood lot to cut cord wood and such wood was cut thereon every year until about 1957, and that about a dozen times a year he had cut Christmas trees and wreaths and had used Mountain Road in a truck or sled.''

The judge stated in his decision that ''[t]here is conflict and room for controversy in the record title of the parties. . . . Franklin K. Simonds, a predecessor in title of the petitioners, used the disputed area as part of a large farm lying mostly in Lexington as far back as 1900. The disputed area was fenced off from land lying to the northeast and southeast thereof and was enclosed and used, as an integral part of the Simonds' farm, to pasture cattle. Albert H. Burnham, successor in title to the Simonds' farm, bought the disputed area for a woodlot in 1943. . . . He cut wood and timber and used the disputed area as a part of and in the operation of this farm until his death in 1959. Albert H. Burnham's sons conveyed to petitioners in 1962.''

The judge found ''that the petitioners and their predecessors in title have exercised complete control and exclusive dominion, continuously, openly, adversely and notoriously and have occupied and used the disputed area under a claim of ownership for a period of well over the twenty years necessary to acquire title by adverse possession and that during that period no one other than the petitioners ever claimed ownership of said land, and that the petitioners have proved title in fee by adverse possession and mesne conveyances.'' The respondents presented twelve requests for rulings. The judge refused all of them ''because they are either unnecessary, immaterial, inapplicable, contrary to the facts found . . . or contrary to law.''

The judge ruled "that the petitioners are entitled to a decree registering title to all of the land described in the petition . . . , free from any rights or title in the respondents, subject to any matters set forth in the examiner's report which are uncontroverted."

The respondents' requests for rulings numbered 3, 4, and 10 concern adverse possession when there are no substantial enclosures of the area in question. These requests were immaterial in view of the judge's finding that "[t]he disputed area was fenced off from land lying to the northeast and southeast thereof and was enclosed and used, as an integral part of the Simonds' farm, to pasture cattle." We believe that the evidence warranted this finding.

The respondents' requests for rulings numbered 5 and 7 treat with whether adverse possession must be "open, visible and notorious" and whether the possession of the petitioners and their predecessors came within this principle. The judge found "that the petitioners and their predecessors in title have exercised complete control and exclusive dominion, continuously, openly, adversely and notoriously." We are of opinion that the evidence supports this finding. There was no error in the refusal to grant these requests.

The respondents' requests for rulings numbered 1, 2, 6, 8, 9, 11, and 12 deal with whether the evidence warrants a finding in favor of the respondents and against the petitioners' claim to title by adverse possession. We are satisfied that the evidence warranted the judge's finding that "the petitioners have proved title in fee by adverse possession."

The respondents filed a motion for a new trial and assigned the following reasons: "(1) The Court has made a mistake of law. (2) For newly discovered evidence. (3) To prevent a miscarriage of justice." In support of their motion the respondents filed an affidavit which stated that at a new trial they would introduce the testimony of four persons that the disputed area was wild woodland and was never used to pasture cattle.

We have treated with the respondents' several contentions that the court made a mistake of law. We cannot dis-

cern any "miscarriage of justice." The new evidence offered by the respondents was available at the time of trial and is similar to evidence which was offered at the trial. We are satisfied that the judge did not abuse his discretion in denying the motion for a new trial. *Brien* v. *Holyoke St. Ry.* 257 Mass. 443, 445–446. *Webber* v. *Johnson,* 342 Mass. 455, 457. *Spiller* v. *Metropolitan Transit Authy.* 348 Mass. 576, 580.

*Exceptions overruled.*